**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**NASRADINE HAMAT**,

Plaintiff,

v.

**VESTAS-AMERICAN WIND TECHNOLOGY, INC.**,

Defendant.

Case No. 3:24-cv-956-SI

**ORDER**

**Michael H. Simon, District Judge.**

Plaintiff Nasradine Hamat, representing himself,[1] sues Defendant Vestas-American Wind Technology, Inc. Plaintiff brings claims under the Family Medical Leave Act ("FMLA"), the Texas Workers' Compensation Act, the Fair Labor Standards Act ("FLSA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1981, and Title VII of the Civil Rights Act. Before the Court now is Defendant's motion for summary judgment or in the alternative, motion to transfer venue. Defendant asks the Court to find that the parties have entered into an enforceable

[1] Plaintiff was represented by counsel when he filed his complaint, but he terminated that representation on July 12, 2024. ECF 9.

settlement agreement and order enforcement of that agreement, or in the alternative, to transfer the lawsuit to the United States District Court for the Western District of Texas. Defendant also moves for sanctions in the form of its attorney's fees and costs incurred in bringing these motions. For the following reasons, the Court denies Defendant's motion for summary judgment, grants Defendant's motion to transfer venue, and denies Defendant's motion for sanctions.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Ninth Circuit further instructs that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

**B. Motion to Transfer Under 28 U.S.C. § 1404(a)**

On a motion to transfer venue under 28 U.S.C. § 1404(a), a court may transfer any civil action "[f]or the convenience of parties and witnesses, in the interests of justice." The forum to which transfer of venue is sought must be a district court where the case "might have been brought." 28 U.S.C. § 1404(a). Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (cleaned up); *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*

*Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), *superseded by statute on other grounds*.

**C. Attorney's Fees**

Under the American Rule, attorney's fees are generally recoverable only if there is a contract clause or statutory basis. *See Am. Republic Ins. v. Union Fid. Life Ins.*, 470 F.2d 820, 826 (9th Cir. 1972). A court also may award attorney's fees as a sanction pursuant to the court's inherent authority. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). A district court may, for example, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorney's fees, or assess fines. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). "Although it is preferable that courts use—and first consider—the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, 'courts may rely upon their inherent powers to sanction bad-faith conduct even where statutes and rules are in place.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *F.J. Hanshaw*, 244 F.3d at 1136-37). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

**BACKGROUND**

Plaintiff, who is originally from Chad, worked for Defendant from July 6, 2020, until Defendant terminated Plaintiff's employment on October 12, 2022. ECF 1 ("Compl.") ¶¶ 8, 12-15. Plaintiff worked in Minnesota from July 6, 2020, to September 2022, and then transferred to

Texas in September 2022. *Id.* ¶¶ 91-92, 103. On December 27, 2022, Plaintiff filed a charge of discrimination against Defendant with the Texas Workforce Commission, Civil Rights Division, which was co-filed with the Equal Employment Opportunity Commission ("EEOC"). ECF 35 ("Crowhurst Decl.") ¶ 2; ECF 35-1 at 1-5. Plaintiff amended the charge on February 22, 2023. Crowhurst Decl. ¶ 2; ECF 35-1 at 1-5.

During the administrative proceedings, Plaintiff was represented by Zane Herman. Crowhurst Decl. ¶ 2. On March 18, 2024, the EEOC issued a dismissal of Plaintiff's charges and provided a notice of Plaintiff's right to sue. ECF 35-1 at 6. Between mid-March and mid-June of 2024, Mr. Herman, on behalf of Plaintiff, engaged in settlement negotiations with Megan Crowhurst, Defendant's counsel. Crowhurst Decl. ¶ 4.

On June 12, 2024, Plaintiff and Mr. Herman spoke on the phone, during which Plaintiff "indicated that [he does] not want to keep negotiating with [Defendant], and will instead be filing suit with another firm." ECF 11 at 15-16. Mr. Herman told Plaintiff that Plaintiff's file with Mr. Herman's firm was now closed. *Id.* at 16. Plaintiff responded to this email, asking for a call. *Id.* at 15. Two hours later, Plaintiff emailed Mr. Herman, stating: "I accepted the closing of my case with your legal law firm." *Id.* Mr. Herman responded, "you just asked us to reopen and continue negotiations, and requested that we offer [Amount Redacted] . . . . Do you now want us to retract the offer of [Amount Redacted] and close your file again?" *Id.* There is no direct response from Plaintiff in the record.

On June 14, 2024, Mr. Herman emailed Plaintiff and informed Plaintiff that Mr. Herman was trying to obtain a settlement for a specified amount. *Id.* at 17. Plaintiff instructed Mr. Herman to "[r]espond to them, [I am] not going to accept any offer less than [Amount Redacted] period, and if they are not willing to do that, regardless of whether I will win or lose,

my decision is to move forward with my case." *Id.* The same day, Mr. Herman emailed Ms. Crowhurst to state that Plaintiff was planning on filing suit that day, to comply with the 90-day requirement, and asked if Defendant would be willing to settle for the amount that Mr. Herman had proposed to Plaintiff. ECF 35-1 at 15. Mr. Herman explicitly stated that he did not yet have authority from Plaintiff to settle for less than the amount that Plaintiff instructed, but that Mr. Herman was "optimistic" that he could get Plaintiff to agree to the proposed amount. *Id.*

On June 16, 2024, Plaintiff filed this suit through separately retained counsel, Bernard "Bernie" Mazaheri. *See* Compl. Plaintiff alleges that he suffered a compensable workers' compensation injury in Texas on or about September 23, 2022, and sought workers' compensation benefits from Defendant on or about September 26, 2022. *Id.* ¶¶ 13-14. Plaintiff further asserts that this injury limited his use of his arm, such that he had a disability under the ADA for which he requested accommodations. *Id.* ¶¶ 75-78, 81. Plaintiff alleges that he attended a medical appointment on or about October 10, 2022, and that Defendant demanded that Plaintiff clock out to attend this medical appointment, to which Plaintiff objected. *Id.* ¶¶ 67-70. Plaintiff alleges that his employment was terminated because he sought workers' compensation benefits, asserted his rights under the FLSA, and had a disability. *Id.* ¶¶ 61, 73, 87. Plaintiff further asserts that Defendant interfered with his FMLA rights by "failing to provide him FMLA notice, by not offering him FMLA leave, by having Plaintiff's supervisor seek private medical information about Plaintiff[,] and by discharging him within 21 days of learning of his need for medical leave." *Id.* ¶ 48. Finally, Plaintiff alleges that Defendant subjected him to racial harassment and discrimination from July 6, 2020, through October 12, 2022, occurring in both Minnesota and Texas. *Id.* ¶¶ 91-143.

On June 17, 2024, Mr. Herman and Ms. Crowhurst resumed their settlement negotiations. ECF 35-1 at 7-10. Also on June 17, 2024, Mr. Mazaheri emailed Christine Sargent, an attorney at Ms. Crowhurst's firm, informing her, "It is my understanding that Mr. Hamat was represented by another attorney before the EEOC, whose representation concluded. And an attempt to resolve the case was made after the notice of right to sue was issued but no settlement was reached." ECF 11 at 7-8. Ms. Crowhurst told Mr. Herman that her colleague had received an email from Mr. Mazaheri claiming that Mr. Herman no longer represents Plaintiff, and asked Mr. Herman to confirm that he still had authority to settle on behalf of Plaintiff. ECF 35-1 at 9. Ms. Crowhurst stated that she had authority to offer a certain amount, but that the offer was made "with the understanding that [Plaintiff] is willing to withdraw his Complaint and enter into a release of all claims." *Id.*

Mr. Herman emailed Plaintiff Ms. Crowhurst's offer, and Plaintiff responded: "Go ahead and represent me on this respond if they accept the [Amount Redacted] with respond today . . . I may consider withdraw the litigation." ECF 11 at 19-20. Mr. Herman responded: "Understood, I just spoke with opposing counsel and passed along the discussed offer of [Amount Redacted]." *Id.* at 20. Mr. Herman emailed Ms. Crowhurst: "The bottom line is that [Plaintiff] has provided authority to make one very last, best, and final, offer to resolve by meeting the Company at [Amount Redacted]. . . . [H]e is willing to withdraw his lawsuit and reach a resolution with [Defendant] at [the larger amount] . . . ." ECF 35-1 at 8. Ms. Crowhurst responded that Defendant accepted, and Mr. Herman replied: "That is good news. The parties have a deal at [Amount Redacted]." *Id.* at 7. Mr. Herman then emailed Plaintiff to notify him, and Plaintiff responded "good . . . I will call Mr. Bernie [Mazaheri] as well and see how will react." ECF 11

at 20. The next day, Plaintiff emailed Mr. Herman and said that he could not accept the settlement. *Id.* at 21.

On June 27, 2024, Ms. Crowhurst emailed a written settlement agreement to Mr. Herman and Mr. Mazaheri. ECF 35-1 at 32-42. Mr. Mazaheri responded that Plaintiff denied there had been an agreement and asked to see the relevant emails. *Id.* at 31-32. Plaintiff terminated Mr. Mazaheri's representation on July 12, 2024. ECF 9.

On August 16, 2024, Defendant filed a Motion to Enforce Release Agreement and Motion to Dismiss, ECF 15, which the Court denied, ECF 20. On December 9, 2024, Defendant moved for leave to file a motion for summary judgment, ECF 28, which the Court granted, ECF 33. Defendant then filed the current motions. ECF 34.

## DISCUSSION

### A. Summary Judgment

Defendant argues that there is no genuine dispute of material fact that the parties formed an enforceable settlement agreement. Defendant contends that Mr. Herman had both actual and apparent authority to accept the settlement offer. Plaintiff responds that Mr. Herman did not have authority to accept a settlement agreement on his behalf. Plaintiff argues that Mr. Herman and Defendant misconstrued his words, likely exacerbated by the fact that Plaintiff is not a native English speaker, and that Plaintiff never agreed to a settlement, but only to continue negotiating.

Regarding actual authority, Plaintiff's emails to Mr. Herman are equivocal. Plaintiff does not state that he will certainly accept a settlement of the discussed amount, but just that he "may consider withdraw[ing] the litigation." ECF 11 at 20. Similarly, Plaintiff's response to learning that Defendant would settle for that amount indicates that Plaintiff was waiting to get Mr. Mazaheri's response before deciding whether to accept the settlement. *Id.* ("I will call Mr. Bernie as well and see how [he] will react."). Viewing the facts in the light most favorable to

Plaintiff, the non-moving party, there is a genuine dispute of material fact as to whether Mr. Herman had actual authority to settle on Plaintiff's behalf.

As to apparent authority, it "is created by conduct of the principal, which when reasonably interpreted causes a third party to believe that the principal has authorized the agent to act on the principal's behalf in the matter." *Kaiser Found. Health Plan of the Nw. v. Doe*, 136 Or. App. 566, 573 (1995). In *Kaiser*, the Oregon Court of Appeals explained that

> the record shows that from the time [the defendant] first contacted [her attorney], and especially during mediation, defendant permitted [her attorney] to do all the negotiating regarding the case on her behalf, and in turn, he kept her apprised of his negotiations and made counteroffers on her behalf. The offer itself was conveyed to defendant through [her attorney], and defendant's and [her attorney's] conduct indicated that an acceptance or rejection would be conveyed to plaintiff through [her attorney], which in fact happened. When [the defendant's attorney] accepted the settlement, plaintiff had no reason to believe that he was not authorized to accept all of the terms. In sum, defendant's conduct was reasonably interpreted by plaintiff as having given [the defendant's attorney] authorization to accept the entire offer.

*Id.*

Here, Mr. Herman conducted all the negotiations with Defendant until this lawsuit was filed. After the lawsuit was filed, however, Mr. Mazaheri contacted Defendant's counsel to inform them that he now represented Plaintiff and Mr. Herman's representation had concluded. ECF 11 at 7-8. Although Mr. Herman did tell Defendant's counsel that he had authority, the Court cannot say that as a matter of law, it was reasonable for Defendant's counsel to interpret this as authorization. A reasonable attorney would likely contact Mr. Mazaheri to confirm that Mr. Herman still had authority to negotiate on behalf of Plaintiff. Thus, there is a genuine dispute of fact as to whether Mr. Herman had apparent authorization to accept the settlement offer, and the Court denies Defendant's motion for summary judgment.

**B. Transfer**

Defendant moves in the alternative to transfer this case to the Western District of Texas. Defendant bears the burden of making a strong showing of inconvenience to justify a transfer of venue. In determining whether to transfer venue under § 1404(a), a court must consider both the private interests of the parties and public-interest factors. The private-interest factors include:

> [1] relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors include:

> [1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6 (quotation marks omitted).

**1. Private-Interest Factors**

It appears that the only connection between this case and Oregon is that Defendant is headquartered in Portland, Oregon. Plaintiff currently resides in Wisconsin, Compl. ¶ 6, and the conduct that Plaintiff alleges in his complaint occurred in Minnesota and Texas. Plaintiff states that he was a “resource traveling technician” who reported to and received his work assignments from Matthew Olts in Portland. ECF 32 at 2. Defendant responds that Olts is a remote employee who works in Washington, not Portland, and manages projects across the country, and that

Plaintiff's immediate supervisors live and work in Texas. ECF 46 ("Supp. Huston. Decl.") ¶¶ 2-3. Although Plaintiff's choice of venue is an important consideration, this presumption "applies with less force when," as is the case here, "the plaintiff or real parties in interest are foreign." *Piper Aircraft*, 454 U.S. at 255. The other private-interest factors—namely, the availability of non-party witnesses and sources of proof—weigh strongly in favor of transfer. Most of the non-party witnesses are current or former employees of Defendant who live and work in Texas. ECF 36 ("Huston Decl.") ¶¶ 3-5. These witnesses thus could not be compelled to attend a trial or deposition in Oregon under Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure, as the witnesses live and work more than 100 miles from the District of Oregon. Plaintiff's injury occurred in Texas, he applied for workers' compensation in Texas, and he sought treatment in Texas. *Id.* ¶ 6. These facts lead to the conclusion that Texas is a more convenient forum for the parties than Oregon. Thus, the private interest factors weigh in favor of transfer.

**2. Public-Interest Factors**

In assessing administrative difficulties, the Court considers "whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984). As of December 2024, the median time from filing to trial in a civil case in the Western District of Texas was 33.9 months, compared to 37.5 months in the District of Oregon. *Federal Court Management Statistics*, U.S. Cts. (Dec. 31, 2024), https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-december-2024. Although this is an imprecise estimator, the slight difference indicates that the districts have similarly congested dockets, and this factor weighs neither in favor of nor against transfer.

The local interest factor weighs in favor of maintaining claims in the location of the relevant incident. Plaintiff's causes of action arise from conduct in Texas and Minnesota, not

Oregon. This factor thus weighs in favor of transfer. The choice-of-law factors also weigh in favor of transfer because Plaintiff alleges a claim under Texas law and brings no claim under Oregon law. Finally, conducting a trial in Oregon would burden jurors in an unrelated forum more than would conducting a trial in Texas. Overall, four public factors weigh in favor of transfer, and one factor is neutral. Transfer is therefore proper, and the Court grants Defendant's motion to transfer.

**C. Attorney's Fees**

Defendant argues that the Court should issue sanctions against Plaintiff for "baselessly challenging the enforceability of the settlement agreement." Defendant contends that Plaintiff's "gamesmanship" in not accepting the settlement agreement has caused this matter to drag on.

As discussed, Defendant has not shown that the purported settlement agreement was enforceable as a matter of law. Accordingly, Plaintiff did not baselessly challenge the settlement agreement, and sanctions are not warranted.

**CONCLUSION**

The Court DENIES Defendant's motion for summary judgment, ECF 34, and DENIES Defendant's motion for sanctions, ECF 34. The Court GRANTS Defendant's alternative motion to transfer venue, ECF 34, and transfers this case to the United States District Court for the Western District of Texas. The Clerk of this Court is directed to effectuate this transfer.

**IT IS SO ORDERED.**

DATED this 1st day of April, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge